**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-30929

VIVIAN PIPER,

Plaintiff-Appellant,

VERSUS

ANN VENEMAN, Secretary, Department of Agriculture,
National Finance Center,

Defendant-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana

(98-CV-3647-L)

June 13, 2001

Before EMILIO M. GARZA and PARKER, Circuit Judges, and ELLISON, District Judge.[*]

ROBERT M. PARKER, Circuit Judge:[**]

Plaintiff Vivian Piper appeals the summary judgment awarded defendant Daniel Glickman, Secretary, Department of Agriculture,

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

National Finance Center ("NFC"), in her employment discrimination suit.  We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Piper, an African-American female, is a Systems Accountant at NFC's office in New Orleans, Louisiana.  She has been employed there since June 1974 and in her current position since 1985.  She brought suit pursuant to Title VII of the Civil Rights Act of 1964, codified in 42 U.S.C. § 2000(e) *et seq.,* alleging that NFC discriminated against her because of her race, sex, and age,[1] and retaliated against her because of her prior complaints to the Equal Employment Opportunity Commission ("EEOC").

On August 27, 1980, Piper filed a formal complaint against NFC alleging that NFC had discriminated against her because race, sex and in reprisal for her previous EEOC activities.  She specifically alleged that she was not selected for promotion; she was denied training; part of her job duties were transferred to others; she was harassed by her supervisor; she was denied overtime assignments; and she received a low performance rating.  On September 25, 1985, the EEOC entered a finding of discrimination with regard to NFC's issuance of Piper's performance appraisal, her non-promotion, and the denial of overtime.  NFC was directed to

---

[1]Although Piper mentions that she is asserting an age discrimination claim, that claim is without merit as it was not supported by evidence or argued in the district court or in this court.

promote Piper to the position of Supervisory Operating Accountant, reimburse her for the overtime pay she would have received absent discrimination and take appropriate disciplinary action against the decision-makers at NFC who were responsible for the discrimination. *See Piper v. Department of Agriculture*, Appeal No. 01832501 (EEOC Office of Review and Appeals Sept. 25, 1985).

Piper filed suit against NFC in federal district court in 1991, alleging that NFC had continued to discriminate against her. The parties reached a settlement agreement and an agreed judgment of dismissal was entered on June 22, 1994.

Piper filed the present suit in December 1998, alleging that she was denied promotions because she is African-American, female and is perceived as a trouble-maker for filing 32 EEOC complaints and a law suit against NFC. She also claimed that she had been given a low performance rating and improper evaluations, denied cash awards, passed over for promotions while other employees with lesser qualifications were promoted, evaluated with subjective criteria, given fewer job responsibilities, and reassigned to positions outside her line of work.

Defendants moved for summary judgment. The district court found that the summary judgment evidence, taken in the light most favorable to Piper, supported a prima facie case of discrimination and retaliation as to her failure to promote claims. Although it was unclear whether her allegations of other discriminatory and

retaliatory acts by NFC were independent claims, the district court held that none of them were ultimate employment actions protected by Title VII, citing *Schackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999).

The burden then shifted to NFC to articulate a nondiscriminatory reason for failing to promote Piper. NFC explained that other candidates were better qualified for the positions to which Piper applied. First, NFC explained that it awarded a position of Chief of Payroll/Personnel Branch (NFC 97-004) to a candidate who had nineteen years of supervisory experience, seventeen of which were in the payroll/personnel area. Also, the selectee had been acting as a branch chief in his supervisor's absence. In 1996, NFC selected another candidate with nineteen years of relevant experience for the position of Supervisory Systems Accountant (NFC 95-087) who had also been section head for the branch for the eight preceding years. The individual chosen for the position of Branch Chief of the Accounting Reconciliation Branch (NFC 94-017) had served as section chief for six years. The selecting official for the position of Supervisory Systems Accountant (NFC 93-044) was an African-American female who chose a candidate with seven years of specific experience and strong analytical skills. For the position of Accounting Reporting Branch Chief (NFC 97-064), NFC promoted an African-American female with eighteen years of experience in the

4

Accounting Reporting Branch and nine years of supervisory experience as a section head.  A sixteen-year veteran who had managed and supervised the Billings and Collection Branch was chosen for the position of Billings and Collections Branch Chief.  Finally, NFC stated that an individual with nineteen years of experience with the Payroll Accounting Section was chosen to be head of Payroll Accounting Section (NFC 97-045).

The district court determined that NFC's articulation of non-discriminatory reasons for not promoting Piper shifted the burden back to Piper to demonstrate that the reasons given were pretextual.  After considering Piper's allegations and summary judgment evidence, the district court found that the evidence did not raise a genuine issue of material fact concerning whether the defendant's non-discriminatory explanations were pretextual. Piper had only one year of supervisory experience while each of the other candidates served from nine to nineteen years as supervisors.  Contrary to Piper's allegations, NFC selected both women and African-Americans for supervisory positions.  In fact, one supervisor who did not select Piper for a promotion is herself an African-American woman.

Finally, the district court held that the evidence does not support Piper's retaliation claim.  The court determined that she was not promoted because she was not as well-qualified as other candidates, ans she had offered only her belief that she was denied a promotion because of her prior EEOC complaints.  Even if her

5

history of discrimination complaints contributed to the decisions not to promote her, the district court held that she cannot establish liability for unlawful retaliation if NFC would have denied her promotions notwithstanding her complaints to the EEOC, citing *Long v. Eastfield College*, 88 F.3d 300, 305 n.4. (5th Cir. 1996).

## II. ANALYSIS

### A. Standard of Review

We review a grant of summary judgment *de novo* and apply the same standards as the district court. *Benningfield v. City of Houston*, 157 F.3d 369, 374 (5th Cir. 1998). If the summary judgment evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, the summary judgment entered by the district court will be affirmed. *See* FED.R.CIV.P. 56(c).

### B. Proof of Past Discrimination

Piper contends on appeal that the district court erred in by failing to properly consider NFC's past discrimination against her.

First, Piper argues that the Title VII burden-shifting construct articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 249-50 (1981), must be modified in this case because NFC had discriminated against her in the past. Piper reasons that once she made out her prima facie case and proved that NFC had

6

previously discriminated against her, the burden shifted to NFC to prove by clear and convincing evidence (rather than preponderance of the evidence) that its decisions regarding her employment were motivated by legitimate, non-discriminatory reasons. For this proposition, she relies on a line of cases stemming from *Keyes v. School District No. 1*, 413 U.S. 189 (1973). In *Keyes*, the Supreme Court "thrust upon the School Board the burden of justifying its conduct by clear and convincing evidence" because the school had a history of segregation coupled with the discharge of a large number of African-American teachers incident to desegregation. *Id.* at 209. The Fifth Circuit has required local boards of education to meet the stringent *Keyes* evidentiary burden when plaintiffs have proved an immediate past history of racial discrimination in a recently desegregated school district. *See Lee v. Conecuh County Board of Education*, 634 F.2d 959, 963 (5th Cir. 1981); *see also Lee v. Washington County Board of Education*, 625 F.2d 1235, 1237 (5th Cir. 1980). Although this circuit has imposed a similar burden in Title VII class action cases, *see Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437 (5th Cir. 1974), that burden is not applicable in the context of individual discrimination cases.

*Keyes* and its progeny shifted the burden of persuasion in cases where the defendant had a history of discrimination and where significant numerical disparities existed in the employer's treatment of minority employees. Piper's case does not fall into

that category of cases. Piper alleges, instead, that NFC has a history of discriminating against her personally. The Supreme Court has consistently held that the ultimate burden of persuading the trier of fact that the defendant discriminated against plaintiff in an individual, disparate-treatment case remains at all times with the plaintiff. *Burdine*, 450 U.S. at 256. We therefore find that the district court did not err in rejecting Piper's *Keyes* analysis.

In related grounds of error, Piper complains that the district court failed to adequately take into consideration NFC's predisposition toward discrimination which she established by proffering evidence that NFC had previously discriminated against her. As the district court noted, Piper did not offer evidence which refuted the district court's conclusion that the individuals who were selected for promotions were better qualified for the positions than she was. *See Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (holding that in order to rebut employer's articulated non-discriminatory reason that plaintiff was not as well-qualified as the workers that employer had selected, plaintiff must offer sufficiently specific basis for claim that he was in fact the better-qualified worker). Moreover, one of the promoted employees was African-American, another was female, and one of the selecting officials in another promotion was an African-American female. We find no error in the district court's view of

8

the evidence.

**C. Interim change in Title VII law**

The district court filed its Order and Reasons on June 7, 2000, and the Final Judgment on June 14, 2000. In the interim, on June 12, 2000, the Supreme Court resolved a split among the circuits on the issue of whether a defendant is entitled to judgment as a matter of law where a plaintiff's case consists only of a prima facie case under *McDonnell Douglas* and sufficient evidence for a reasonable trier or fact to reject the defendant's legitimate, non-discriminatory explanation for its decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 140 (2000). The Supreme Court held that such evidence is sufficient for a plaintiff to withstand a grant of judgment as a matter of law in favor of the defendant. *Id.* at 148. Even if the district court had applied the new *Reeves* standard, Piper's case cannot survive summary judgment because she did not present evidence sufficient for a reasonable trier of fact to reject NFC's nondiscriminatory explanation for its decisions.

**D. Actionable Adverse Employment Actions**

Piper next alleges that the district erred by focusing only on NFC's failure to promote her and denying her relief on her claims of discrimination and retaliation related to performance evaluations, cash awards, assignment of duties, and supervision by a lower-grade employee. Piper identifies no evidence, and our

9

review of the record has uncovered none, that she suffered any actionable employment actions other than NFC's failure to promote her.

Piper contends in a related argument that she has alleged twelve instances of tangible employment action in addition to the four that the district court examined in detail. Having examined the record, we agree with the district court that the summary judgment evidence presents no genuine issue of material fact concerning Piper's additional allegations of "non-promotional claims," which consist of her twelve EEOC complaints that did not pertain to NFC's failure to promote her.

### III. CONCLUSION

We therefore conclude that the district court did not err in denying Piper relief on her claims for relief based on any of the alleged employment decisions, and we affirm the entry of summary judgment for NFC.

AFFIRMED.