## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 1, 2011

Lyle W. Cayce
Clerk

No. 11-50119

KENNETH W. NUNLEY

Plaintiff-Appellant

v.

CITY OF WACO

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:09-CV-197

Before KING, GARZA, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Kenneth W. Nunley challenges the district court's grant of a motion for summary judgment in favor of Defendant City of Waco. For the reasons stated herein, we affirm the ruling of the district court.

**I**

Plaintiff Kenneth Nunley has been an employee of the City of Waco ("the City") since May 1994, during which time several disputes occurred, all of which are of relevance to the present litigation. In 1999, Nunley was involved in a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50119

dispute with a fellow employee, Cynthia Simms, and both parties registered complaints with their supervisors. In 2001, a department reorganization resulted in Nunley being demoted to a non-supervisory position. Five white employees received lesser demotions to supervisory positions, and Nunley allegedly complained about this, though there is no documentation of it on record. Finally, in 2004, an operations coordinator ("OC") position came open, and Nunley applied. Another person was selected, and Nunley subsequently filed a complaint with the EEOC, alleging that the decision was racially motivated.

In 2006, the City posted a job opening for another OC position in the Parks and Recreation Department. The posting stated that a high school diploma was required and an associate's degree desired; that two years of previous supervisory experience in a related field was required and athletic field maintenance experience desired; and that pest applicator's and irrigator's licenses were desired. Mr. Nunley, along with seven other individuals, applied and, along with four other applicants, was selected to be interviewed by a panel of four persons. The panel, which included Steve Miller, was chosen by Rusty Black, the director of the Parks and Recreation Department.

After interviews, the panel chose Ken Griffin, a white male, over Nunley, a black male, citing Griffin's possession of an associate's degree in turf management and an irrigator's license, his experience maintaining irrigation systems and ballfields at Baylor University, and his favorable impression during the interview. The panel concluded that Nunley, who had considerable experience working for the city and a pest applicator's license, was qualified for the job, but not as qualified as Griffin.

Nunley subsequently filed a complaint with the EEOC, claiming race discrimination. The City filed two responses to the complaint, citing the foregoing reasons for choosing Griffin, referencing "certain incidents" which had

2

No. 11-50119

"caused some reservations" about how well Nunley would get along with others, and raising concerns about his leadership and communication skills. However, in subsequent deposition testimony, Miller stated that he did not recall the interview panel discussing how well Nunley got along with others and that he did not know how well Nunley had performed as a supervisor. He did not mention Nunley's communication skills. The EEOC issued a determination letter of discrimination.

Nunley filed suit, alleging discrimination under Title VII and basing his claim on (1) an alleged conflict between Miller's deposition testimony and the City's EEOC responses, (2) an assertion that he was "clearly better qualified" than Griffin, and (3) the EEOC determination letter. Nunley also claims that the City chose Griffin over Nunley in retaliation for his 2001 and 2004 complaints. The district court granted the City's motion for summary judgment on all of Nunley's claims. Nunley now appeals.

## II

We review the district court's grant of summary judgment *de novo,* applying the same standards as the district court. *Burge v. Parish of St. Tammany*, 157 F.3d 452, 465 (5th Cir. 1999). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact issue is "material" if its resolution could affect the outcome of the action. *Id.* When reviewing a summary judgment, we construe all facts and inferences in the light most favorable to the non-moving party. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

No. 11-50119

## III

In order to overcome a summary judgment motion in a Title VII employment discrimination claim, a plaintiff must establish a prima facie case of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its actions. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If this burden is met by the defendant, the plaintiff must then offer sufficient evidence that either (1) the defendant's reason is not true, but is instead a pretext for discrimination or (2) the reason, while true, is only one of the reasons, and another motivating factor is the plaintiff's protected characteristic. *Id.*

The city concedes that Nunley has established a prima facie case and Nunley concedes that the City has articulated legitimate, non-discriminatory reasons for its decision not to hire Nunley. The issue on appeal is thus whether Nunley has raised a genuine issue of material fact as to pretext or mixed-motives.

## A

Nunley first argues that conflict between the City's EEOC response and Miller's deposition raises a fact issue under *Burrell v. Dr. Pepper*, 482 F.3d 408 (5th Cir. 2007). In *Burrell*, we concluded that the defendant's rationale for a hiring decision was "suspect because it [had] not remained the same" and that "a reasonable factfinder could conclude that [the defendant's] asserted justification . . . [was] 'unworthy of credence' and a pretext for intentional discrimination." *Id.* at 415 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)). Nunley argues that because Miller's statements regarding Nunley's interpersonal skills conflict with the EEOC response, the

No. 11-50119

City's rationale is similarly "suspect."[1]  We note, however, that the conflicting statements concern one of many justifications, and we conclude that the City's rationale has essentially remained the same.  In other words, in arguing that he only needs *some* conflicting statements concerning *any one part* of a multi-faceted rationale, we think Nunley asks too much of *Burrell*.

In *Burrell*, the inconsistent explanations by the employer concerned the candidate's experience, which was, in all of the proffered explanations, the deciding factor.  *Id.*; *see also Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002) (in which conflicting testimony went to the core of the employer's hiring decision).  In contrast, the subject of the inconsistent statements in the present case—Nunley's ability to get along with others—was but one item in a long list of reasons why the City hired Griffin instead.  The City's 2007 EEOC response lists the following reasons for its decision: (1) Griffin's possession of an associate's degree in a relevant field, (2) the good reputation of the institution from which he received the degree, (3) his possession of an irrigation license and experience maintaining irrigation systems, (4) his experience and track record as a groundskeeper at Baylor, and (5) the favorable impression he made in his interview.  All of these items were discussed before the response mentions any concerns about Nunley's interpersonal skills.  Thus, the great bulk of the City's rationale was not even implicated by the inconsistent statements.

Furthermore, Nunley has not offered sufficient evidence that the rationale which *was* the subject of the inconsistent statements was "unworthy of credence." *Reeves*, 530 U.S. at 147.  The plaintiff in *Burrell* presented evidence

---

[1] The 2008 EEOC response stated that "there had been certain incidents involving Mr. Nunley, which caused some reservations related to how he would get along with others if he became the OC and how he would supervise."  In response to subsequent deposition questioning concerning whether there was any discussion about how well Nunley got along with others, Miller stated, "No, sir, not that I can recall."  The City contends that Miller's statement and the EEOC response do not actually conflict, i.e., that Miller merely testified that he could not remember.  We disagree.

that the very criterion by which he was allegedly disqualified actually cut in his favor, a fact on which the *Burrell* decision was predicated. *Burrell*, 482 F.3d at 414; *see also Gee*, 289 F.3d at 348 ("Gee, however, has provided sufficient evidence to cast doubt on [the employer's] explanation, thereby enabling a reasonable factfinder to conclude that it was false . . . ."); *Rachid*, 376 F.3d at 312 ("the plaintiff must then offer sufficient evidence to create a genuine issue of material fact . . . that the defendant's reason *is not true*, but is instead a pretext for discrimination (emphasis added)).

Nunley's briefing admits that he and a fellow employee had "some interactions and problems" which resulted in complaints to supervisors from both, and accordingly the City's EEOC response makes reference to "certain incidents" which "caused some reservations related to how he would get along with others." Yet, in an attempt to prove this rationale false and mere pretext, Nunley only cites positive remarks about his interview performance, a "6 out of 10" for "communication" on an employee evaluation, and the absence of complaints about his personal skills in a response to his 2004 complaint. We think the foregoing evidence proffered by Nunley insufficient to declare the City's determination "unworthy of credence" and "a pretext for intentional discrimination." *See Burrell*, 482 F.3d at 415.

**B**

Nunley also contends that a jury could conclude that he is "clearly better qualified" for the position than Griffin. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010). In order to create a permissible inference of discrimination under this theory, "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277,

No. 11-50119

280–81 (5th Cir. 1999). If there are any disparities, we do not think them so great.

First, Griffin possessed an associate's degree in turf management, a qualification which was desired by the City and which Nunley did not possess. Second, Griffin possessed an irrigation license and experience maintaining irrigation systems, including a stint at Baylor University, during which he performed many of the same functions for which he would be responsible as OC. Finally, the City felt his interpersonal, supervisory, and administrative experience were better.

Nunley, on the other hand, leans heavily on his length of service to the City; however, as the district court noted, "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). He also cites his ability to operate heavy machinery and contends that this was a minimum requirement which Griffin did not meet. As Nunley notes, in *Gillaspy v. Dallas Indep. School Dist.*, 278 Fed. Appx. 307, 314 (5th Cir. 2008), we considered the awarding of a position to someone who did not meet minimum job requirements to be sufficient evidence of discrimination to overcome a motion for summary judgment. However, the official job posting in this case did not list operating heavy equipment as a requirement. Furthermore, we do not think the interview questions and answers from Griffin's interview cited by Nunley amount to a failure to meet a minimum job requirement.[2]

---

[2] As indicated from the four sets of interview notes contained in the trial record, the ninth interview question was as follows: "In this position, you will be asked to operate a full range of heavy and light equipment. What types of equipment can you operate effectively?" All four interviewers recorded substantially similar lists, which include "tractor," "mower," "bobcat," and other types of equipment. None of the interviewers' notes reflect a negative response to the question.

No. 11-50119

In short, no reasonable jury could conclude that Nunley was "clearly better qualified." Nunley's own chart, which is included in briefing and sets forth each applicant's qualifications, does not indicate such a disparity. Even if Nunley were more qualified, this Court has repeatedly said that it would not be enough. *See, e.g.*, *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified).").

## C

Nunley next suggests that the district court committed reversible error in not taking the EEOC determination letter into consideration. We do not agree. This Court has stated that "the EEOC's findings of racial discrimination are not dispositive on later racial discrimination suits," *Price v. Fed. Express Corp.*, 283 F.3d 715, 725 (5th Cir. 2002), and has also, in numerous instances, entered summary judgment or granted judgment as a matter of law despite an EEOC determination to the contrary. *See, e.g.*, *id.*; *Vadie v. Miss. State Univ.*, 218 F.3d 365, 370 (5th Cir. 2000) (upholding judgment as a matter of law in defendant's favor after plaintiff had received a right to sue letter from the EEOC); *Odom v. Frank*, 3 F.3d 839, 843 (5th Cir. 1993) (holding that the district court's finding that plaintiff was discriminated against was clearly erroneous, despite EEOC's contrary conclusion); *cf. Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972) (stating that subsequent civil litigation is a *de novo* proceeding, "completely separate from the actions of the EEOC"). We do not think the district court, as Nunley puts it, "ignored" the determination, but rather that the court simply looked at the facts in the summary judgment record and came to a different conclusion.

## IV

Finally, Nunley argues that the City's failure to promote him to the OC

No. 11-50119

position amounted to retaliation for his earlier complaints of racial discrimination in 2001 and 2004. In order to make out a prima facie case of retaliation under Title VII, Nunley must show that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011). Once a plaintiff has made out a prima facie case of retaliation, the burden shifts to the defendant to offer proof of a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Upon the defendant's offering such proof, the burden shifts back to the plaintiff to show that "but for" the protected activity, the adverse employment action would not have occurred. *Id.*

Assuming, *arguendo*, that Nunley has made out a prima facie case[3] and the City has offered a legitimate, non-retaliatory reason for the adverse employment action (a fact which Nunley has conceded), Nunley failed to establish the "but for" causation required by the *McDonnell Douglas* framework, as he fails to offer sufficient proof that any alleged retaliatory motive was a necessary cause of the decision not to hire. A plaintiff can only avoid summary judgment on "but for" causation by demonstrating "a conflict in substantial evidence on this ultimate issue." *Id.* at 132 (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)). Evidence is "substantial" if it is of a quality and weight such that "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* We do not believe Nunley has demonstrated such a conflict.

Nunley calls to our attention *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010), in which we held that the *Price Waterhouse* "mixed motive" framework

---

[3] The City maintains that Nunley has offered no proof that he actually complained in 2001, in which case that instance would not qualify as protected activity, and Nunley would not have made out a prima facie case of retaliation as to that incident.

9

applies to Title VII retaliation cases, and a plaintiff may show that a protected activity was a "motivating" or "substantial" factor. *Id.* at 329 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)). Furthermore, in *Xerox*, we also dispensed with our previous requirement that a plaintiff offer direct evidence of retaliation in order to proceed on the mixed-motive theory. *Id.* at 332 (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)). Thus, Nunley argues, a plaintiff bringing a Title VII retaliation claim need only offer evidence that retaliation was a factor, i.e., that the City had "mixed motives," and such evidence may be circumstantial.

But as we explained in *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996), there are different tests for causation within the *McDonnell Douglas* framework—the initial "causal-link" required for making out a prima facie case, and the "but for" causation required after the employer has offered a legitimate, non-discriminatory justification. *Id.* at 305 n.4 ("At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a *causal* link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly. . . . The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent."). Indeed, the Court's opinion in *Xerox* affirms that the *Price Waterhouse* mixed-motive approach as applied in the retaliation context preserves an employer's ability to escape liability by refuting but for causation. *Xerox*, 602 F.3d at 333 ("[T]he mixed-motives theory is probably best viewed as a defense for an employer. This 'defense' allows the employer—once the employee presents evidence that an illegitimate reason was a motivating factor, even if not the sole factor, for the challenged employment action—to show that *it would have made the same*

*decision even without consideration of the prohibited factor*." (emphasis added) (footnote and internal quotation marks omitted)); *see also Manaway v. Med. Ctr. of Southeast Tex.*, 2011 WL 2496626 (5th Cir. 2011) ("The burden then shifts back to the employee to 'prove that the protected conduct was a 'but for' cause of the adverse employment decision.'" (quoting *Hernandez*, 641 F.3d at 129)). Thus, our decision in *Xerox* did not dispense with this final "but for" requirement for avoiding summary judgment.

In attempting to show causation, Nunley references (1) his 2001 and 2004 complaints, (2) the implication in those complaints of Miller and Black, (3) Miller's picking of the panel members who interviewed Nunley in 2007, and (4) Black's supervision over that interview process. We think the City is correct in noting that this amounts to nothing more than an observation that the same people were involved in all three instances. We are certain the summary judgment standard requires something more than this, lest a plaintiff get to a jury with nothing more than proof of a prior accusation, a subsequent negative employment action, and no intervening change in supervision. *See Hernandez*, 641 F.3d at 132–33 (upholding summary judgment for employer on a retaliation claim where plaintiff alleged (1) employer's investigation was not governed by normal procedures; (2) post-termination grievance process was unfair; (3) employees were treated unequally; and (4) similarly-situated employees were treated more fairly); *Manaway*, 2011 WL 2496626, at *7 (upholding summary judgment for employer where employer had other documented reasons for dismissal). Accordingly, and for the other reasons stated herein, the district court was correct to grant the City's motion for summary judgment on the retaliation claim.

No. 11-50119

## V

In conclusion, we find the plaintiff's arguments on appeal unconvincing and uphold the district court's grant of summary judgment in favor of the defendant.

AFFIRMED.